RICHARD SHUCK *v.* COMMONWEALTH.

**Criminal Law—Homicide—Opinion Evidence.**
> It is impossible to always prove by direct testimony the identity of a person or object, and witnesses in identifying a corpse are allowed to express their beliefs or give their opinions as to such identity, or even to deduce inferences respecting the fact in question from other facts, provided these facts are within their personal knowledge.

APPEAL FROM OWEN CRIMINAL COURT.

April 19, 1877.

OPINION BY JUDGE LINDSAY:

Richard Shuck was indicted in the Owen Criminal Court for the murder of Nelson Parrish. He has been tried and convicted and is now under sentence of death. He asks this court to review and

reverse the judgment of the criminal court. His counsel rests his claim to the reversal upon the single ground that incompetent evidence was allowed to go to the jury, touching the identification of the remains of a human being, supposed to be that of the said Nelson Parrish. They were found in the ashes of a schoolhouse that was consumed by fire on the night of the day on which it is supposed the alleged murder was committed. Joe Goodrich was allowed to state:

"I made an examination of the body found there. I found two teeth out of the upper jaw, one in front and one on the right of it. The body was lying on its back when I saw it. Had no appearance by which I could recognize it, only teeth. I saw knife now shown me. It was taken from the remains. Parrish had a knife like that one. Didn't see suspender buckles picked up. Saw them afterwards. Parrish wore buckles just like them, if they are not the ones. He was six feet, one inch high and weighed 136 or 137 pounds. The remains I saw were the remains of Nelson Parrish. I knew it was the remains of Nelson Parrish from the broken teeth, knife and suspender buckles. They were certainly human remains and I thought at the time they were the remains of Nelson Parrish."

On cross-examination he stated further: "There was nothing in the appearance of the body that I could distinguish whether a white man or a black man, nor one man from another, only teeth. I thought at the time and think so still that they were the remains of Nelson Parrish."

B. C. Morgan stated: "I found a knife in the ashes, the one shown me. On the Sunday before I had Parrish's knife in my hands. It was like this. I did not notice any wear on the knife Parrish had. Saw teeth out in the remains. Don't know which teeth were out. Always thought Parrish had the two upper teeth out, and don't know whether they were out on right or left side. They were not much shorter than the other teeth.

"I looked on the body that we found in the ashes. In my opinion they were the remains of Nelson Parrish. I thought at the time they were Parrish's remains. They were burnt and charred and in places almost consumed. The back part of the skull had crumbled off. It appeared as though one of the sills had been under his head. There was some little flesh on the back of the remains. From the place where I saw crisped boot or shoe heels, with iron tacks in it,

to the top of the head, it must have been the remains of a man about six feet tall, and the feet and head were lying crosswise the joists."

J. W. Parrish stated: "The knife shown me looks like pa's knife. I don't remember on which side the teeth were out in the jaw of the body. I saw it. There were two teeth shorter than the others. Pa had two teeth broken off. Don't know on which side they were out. The buckles shown me are the buckles that pa wore. The broken teeth in the remains were like those of my father. I can't say whether these were the remains of my father or not. There were no features that I could distinguish. I couldn't tell whether the teeth were burnt, broken or torn off."

E. B. Hord stated: "I noticed the remains found there. They were the remains of Nelson Parrish. I knew them by the teeth which were broken out. I would have known the Nelson Parrish remains had I seen them in the Gulf of Mexico. I noticed teeth, two in number, out of the body. Parrish had two teeth out on the right side, and in the same place as those out of the skull. The body was so badly burned that none of the features could be recognized, and it was very much contracted, not more than four and one-half feet long. The jaws were entire. I don't know that I would have taken them for Nelson Parrish's remains on any other occasion." On cross-examination he said: "From the knife and buckles, if I had seen them, I would have pronounced it Nelson Parrish's remains in the Gulf of Mexico."

The wife of Parrish stated that he had two teeth out in front, and that the buckles and knife shown her were like those owned by her husband.

We have underscored all the evidence objected to. The ground of the objection is that the statements of the witnesses were mere opinions and therefore incompetent. "Witnesses are constantly allowed to express their belief respecting the identity of persons and things." Taylor on Evidence, Sec. 1273.

In the absence of the persons or thing to be identified, it is often impossible to state the particular facts upon which the witness rests his statement, and yet the principal fact, which is but the conclusion or deduction of the witness himself, is as certainly within his knowledge as any other substantive fact could be. Mr. Taylor also says in the section referred to: "On some particular subjects, positive and direct testimony may be often unattainable; and in such cases a witness is allowed to testify as to his belief or opinion, or even to

deduce inferences respecting the fact in question, from other facts, provided these last facts be within his personal knowledge."

In the late well-considered case of the *Commonwealth v. Sturtivant,* 117 Mass. 122, the Supreme Court of Massachusetts thus states the rule on the subject: "The exception to the general rule that witnesses·cannot give opinions is not confined to the evidence of experts testifying on ·subjects requiring special knowledge, skill or learning, but includes the evidence of common observers testifying to the results of their observation made at the time in regard to common appearances or facts and a condition of things which cannot be reproduced and made palpable to the jury. Such evidence has been said to be competent from necessity, on the same ground as the testimony of experts, as the only method of proving certain facts essential to the proper· administration of justice. Nor is a mere opinion which is thus given by the witness but a conclusion of fact to which his judgment, observation and common knowledge have led him in regard to a subject matter which requires no special learning or experience, but which is within the knowledge of men in general."

The neighbors and friends of Parrish found the charred and disfigured remains of a human being. Circumstances and appearances, too minute and too nearly impalpable to be detailed, and reasons founded on facts, and impressions which cannot be stated, but which were present to them, controlled their judgments and convinced them that they were the remains of their missing neighbor. These judgments or opinions are within the rule stated by Taylor, and authoritatively announced by the Massachusetts court in Sturtivant's case. They were admissible as evidence on the trial in the court below from the necessities of this particular case, and because they relate to a fact which from the nature of things was not susceptible of being proved by better and more satisfactory testimony.

All the collateral facts in proof tend to sustain the correctness of the conclusions of these witnesses on the question of the identity of these remains. And on this subject the court instructed the jury specially and with the utmost favor to the accused compatible with the rules of legal procedure in this character of prosecutions.

We cannot say that incompetent evidence was improperly permitted to go to the jury, nor that the substantial rights of the accused were in any way prejudiced by any ruling of the judge of the crim-

inal court. He has had a fair and impartial trial, and the judgment against him must be *affirmed*.

*Major & Gordon, for appellant. Moss, for appellee.*